John M. Toriello
Lars Forsberg
Patrick J. Sweeney
David R. Brand
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
(212) 513-3200

Attorneys for Plaintiff
Gemini II Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEMINI II LTD.,                   08 Civ. 6334 (    ) (    )

                            Plaintiff,

        - against -

DERECKTOR SHIPYARDS CONN., LLC,

                           Defendant.

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS APPLICATION FOR A
## PRELIMINARY INJUNCTION AND EMERGENCY INTERIM RELIEF

Of Counsel:

John M. Toriello
Lars Forsberg
Patrick J. Sweeney
David R. Brand

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT – GEMINI IS ENTITLED TO A PRELIMINARY INJUNCTION AND
EMERGENCY INTERIM RELIEF ...........................................................................................6

   1.   INJUNCTION IN AID OF ARBITRATION.................................................................7

   2.   STANDARD FOR PRELIMINARY INJUNCTION........................................................7

   3.   GEMINI WILL SUFFER IRREPARABLE HARM........................................................8

      a.   Derecktor's Financial Insecurity ................................................................8

      b.   Best Yacht Building Practices and the July 12, 2008 Move.........................10

   4.   GEMINI IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM .......................13

   5.   THE BALANCE OF EQUITIES WEIGHS SUBSTANTIALLY IN FAVOR OF GEMINI ....................14

   6.   GEMINI SHOULD NOT BE REQUIRED TO POST BOND.........................................15

CONCLUSION....................................................................................................................16

## TABLE OF AUTHORITIES

*Air Transp. Int'l Ltd. Co. v. Aerolease Fin. Group, Inc.*,
  993 F. Supp. 118 (D. Conn. 1998)..................................................................................................7

*Benedict v. Amaducci*, No. 92 Civ. 5239,
  1993 WL 87937 (S.D.N.Y. March 22, 1993). .......................................................................8

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*,
  910 F.2d 1049 (2d Cir. 1990) ..................................................................................................6

*Borden, Inc. v. Meiji Milk Products, Co.*,
  919 F.2d 822 (2d Cir. 1990) .....................................................................................................6

*Brenntag Int'l Chemicals, Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999)......................................................................................................7

*Clarkson Co. v. Shaheen*,
  544 F.2d 624 (2d Cir. 1976).....................................................................................................13

*Cosgrove v. Bd. of Educ. of the Niskayuna Cent. Sch. Dist.*,
  175 F. Supp. 2d 375 (N.D.N.Y. 2001) ...................................................................................13

*Doctor's Assocs., Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996).......................................................................................................13

*Doherty Assoc. v. Saban Entm't*,
  60 F.3d 27 (2d Cir. 1995) ........................................................................................................11

*Drobbin v. Nicolet Instrument Corp.*,
  631 F. Supp. 860 (S.D.N.Y. 1986) ...........................................................................................7

*Eyewonder, Inc. v. Abraham*, 08 Civ. 3579,
  2008 WL 2388718 (S.D.N.Y., June 10, 2008) .......................................................................6

*Int'l Controls Corp. v. Vesco*,
  490 F.2d 1334 (2d Cir. 1974)...................................................................................................13

*Motorola Credit Corp. v. Uzan*,
  202 F. Supp. 2d 239 (S.D.N.Y. 2002) ......................................................................................6

*Norcom Electronics Corp. v. CIM USA Inc., USA Inc.*,
  104 F. Supp. 2d 198 (S.D.N.Y. 2000) ....................................................................................11

*Otokoyama Co. v. Wine of Japan Import, Inc.*,
  175 F.3d 266 (2d Cir. 1999).......................................................................................................7

*Schwartz v. Interfaith Med. Ctr.*,
    715 F. Supp. 1190 (E.D.N.Y. 1989) ........................................................................11

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995)....................................................................................7

*Waldman Publ'g Corp. v. Landoll, Inc.*,
    43 F.3d 775 (2d Cir. 1994)....................................................................................7

*Walsh v. Design Concepts, Ltd.*,
    221 A.D.2d 454, (2d Dept. 1995) ..........................................................................7

## PRELIMINARY STATEMENT

Plaintiff Gemini II Ltd. ("Gemini" or "Owner") respectfully submits this Memorandum of

Law, together with the Declarations of Dr. Anthony Marlon, dated July 13, 2008 ("Marlon

Decl."), Gavin Bladen, dated July 14, 2008 ("Bladen Decl."), Daniel L. Robsham, dated July 13,

2008 ("Robsham Decl."), Lars Forsberg, dated July 14, 2008 ("Forsberg Decl."), and John M.

Toriello, dated July 14, 2008 ("Toriello Decl.") in support of its application by Order to Show

Cause for emergency injunctive relief and a preliminary injunction, pursuant to Federal Rule of

Civil Procedure 65, requiring defendant Derecktor Shipyards Conn., LLC ("Derecktor" or

"Builder"):

1. to continue construction on a 145 foot catamaran sailing yacht bearing Builder's Hull
   No. 85135 ("Vessel") pursuant to the Vessel Construction Agreement dated as of
   June 30, 2005 ("Contract");

2. to return the Vessel to the building from which Derecktor moved it on or about July
   12, 2008; and

3. to produce certain documents regarding, *inter alia*, insurance coverage for the Vessel
   and Derecktor's financial condition.

All relief would be pending a final decision from a third-party arbitrator ("Arbitrator") regarding

Gemini's claim that Derecktor has breached the Agreement.[1]

The dispute underlying this application for injunctive relief concerns Derecktor's

indefensible failure to construct and deliver a unique, one-of-a-kind catamaran sailing yacht, as it

was required to do in consideration for over 27 million dollars. Gemini has already paid 20

million dollars and delivery was due in November 2007. Gemini has attempted to work with

Derecktor to resolve the dispute, but was compelled today to submit its claim for breach to the

Arbitrator for adjudication on the merits in light of Derecktor's irresponsible, and dishonest

---

[1] Contemporaneous with the presentation of this application, Gemini is serving its demand for arbitration pursuant to
the rules of procedure of the Society of Maritime Arbitrators as directed by Article 27 of the Contract.

action in moving the Vessel to an illegal structure on Saturday July 12, 2008. As an interim measure, Gemini now requires emergency injunctive relief from this Court pending the Arbitrator's ruling to prevent the irreparable harm that will result from this continued breach of the Contract. Derecktor is in flagrant violation of its express contractual duties and, further, Derecktor's financial instability demonstrates that Gemini will have no adequate remedy at law for the continued breach.

## STATEMENT OF FACTS

On or about June 30, 2005, Gemini and Derecktor entered into a contract for the construction of a 145 foot luxury catamaran sailing yacht. Bladen Decl., Exh. 2. The Vessel was to be built at Derecktor's shipyard in Bridgeport, Connecticut.

### 1. Delivery Date

Pursuant to the Contract, Derecktor was obligated to deliver the Vessel by November 30, 2007. Bladen Decl., ¶ 2. The Contract specifies a Delivery Date of November 30, 2007, except as may be changed pursuant to a change order. Bladen Decl., ¶ 2. The Contract provides a fixed Purchase Price of $27,094,498.00, including the payment of subcontractors. *Id.* To date, the owner has made in excess of $20 million in payments to the Builder and its subcontractors for work on the Vessel. *Id.*

Despite the contractual delivery date, the Builder has not yet completed the Vessel. Bladen Decl., ¶ 3. Approximately 25% of the work on the Vessel remains unfinished. *Id.* The Builder has advised the Owner that its current estimated date of completion of the Vessel is June 2009, approximately 18 months after the Delivery Date required by the Contract. *Id.*

### 2. Best Yacht Construction Practices

Pursuant to the Contract, Derecktor was obligated to construct the Vessel using "the best yacht construction practice." Robsham Decl., ¶ 2. Until this past weekend, the Vessel had been

2

housed in the main construction building at the Derecktor Shipyard. Robsham Decl., ¶ 3.  That
building is a fully enclosed building of permanent nature, which includes heat, electricity and
plumbing.  *Id.*  It also has extensive mezzanine staging areas permitting outfitting and
preparatory work to be performed with easy access to the main deck of the Vessel.  *Id.*
Conditions in that building conformed to the "best yacht construction practices" as required by
the Contract.  *Id.*

3. **The Shipping Container Shed**

On or about June 30, 2008, Derecktor advised Gemini that it was going to move the
Vessel from the main construction building to another structure that had been erected on the
shipyard premises (the "Shipping Container Shed").  Robsham Decl., ¶ 5; Balden Decl., ¶ 4.  Use
of the Shipping Container Shed for yacht construction does not conform to the "best yacht
construction practices."  Robsham Decl. ¶¶ 5, 6.  The shed is comprised of three walls of
apparently empty, 40 foot shipping containers, stacked three high. Robsham Decl., ¶ 5, Balden
Decl., ¶ 5.  To the top of the containers is attached a corrugated metal roof structure.  Robsham
Decl., ¶ 5.  One entire side of the structure is open to the elements.  *Id.*.  The Shipping Container
Shed does not have an overhead crane or a mezzanine for staging and movement of equipment
and materials.  *Id.*, ¶ 6.  The Shipping Container Shed is not climate controlled, does not have
permanent electrical power or heavy lifting capacity, and does not appear to have plumbing or
running water.  *Id.*

Derecktor, itself, in its permit application to the City of Bridgeport Building Department,
on or about June 12, 2008, described the building as "an interim utility building as a storage and
weather shelter for sandblasting and performing service work on vessels (work normally done

3

outside)." Balden Decl., Exh. 8.  Significantly, the building does not yet have a certificate of

occupancy, which is required under Connecticut Law prior to legal use of any structure:

> [N]o building or structure erected or altered in any municipality after October 1,
> 1970, shall be occupied or used, in whole or in part, until a certificate of
> occupancy . . . has been issued by the building official, certifying that such
> building, structure or work performed pursuant to the building permit
> substantially conforms to the provisions of the State Building Code and the
> regulations lawfully adopted under said code.

Conn. Gen. Stat. § 29-265.  According to the City of Bridgeport Building Department there are

significant deficiencies, omission, and/or open questions about the Shipping Container Shed

which are currently preventing the issuance of even a Building Permit, let alone a certificate of

occupancy, namely:

1. Whether the existing piles and pile caps are adequate to support the structure;
2. Whether the structure will support a door that can withstand 110 mile per hour wind speeds.
3. The Building does not have the minimum required window openings.
4. The plan does not include a door schedule indicating door type and material and labeling all doors;
5. The doors shown on the plan are not separated by correct distances;
6. Plan does not indicate type of drainage system for flat roof area;
7. Plan does not provide loads for floor slab;
8. Plan needs statement of special inspection for rebar, welds, etc...;
9. Plan does not provide power and lighting plans; and
10. The plan requires other approvals before permit can issue.

Balden Decl., Ex. 9., Plan Review No. 1732.

Placing the Vessel into this type of structure does not conform to best yacht building

practices.  Robsham Declr., ¶ 6.

### 3. **The July 12, 2008 Removal Of The Vessel To The Shipping Container Shed.**

In response to Derecktor's notification of the proposed move to the Shipping Container Shed, Gemini objected and instructed Derecktor to re-commence work on a full time basis on the Vessel in its current location. Balden Decl., ¶ 12. Gemini confirmed this instruction in writing. *Id.* On July 11, Gemini advised Derecktor that it was preparing to apply for a temporary restraining order to prevent any such move to an illegal building. Toriello Declr., ¶ 3. In response, Derecktor stated that it would forebear from making the proposed movement of the Vessel to the Shipping Container Shed for at least one week, if Gemini agreed not to file its proposed temporary restraining order at that time, to which Gemini agreed. *Id.*, ¶¶ 4, 5 Late the following day, Derecktor advised Gemini that it was moving the Vessel to the Shipping Container Shed. *Id.*, ¶ 6. At the time of the email notification, Derecktor had in fact completed its move. *Id.*; Balden Decl., ¶ 15. As a result, the Vessel is now essentially garaged in the Shipping Container Shed and work is not being done on the Vessel.

### 4. **Maintenance Of Insurance Policies**

Additionally, Article 22 of the Agreement requires that the Builder maintain certain insurance policies. Balden Decl., ¶ 10. Recently, Derecktor provided Renewal Certificates, however, not the actual policies, despite Gemini's request for the policies. *Id.* As a result of this failure to provide the insurance policies, Gemini is uncertain with respect to the precise coverage terms for the Vessel as well as any conditions, warranties or exclusions that may apply or maybe implicated by this move of the Vessel to an unpermitted structure. *Id.*

## ARGUMENT

### GEMINI IS ENTITLED TO EMERGENCY INJUNCTIVE RELIEF AND A PRELIMINARY INJUNCTION

Gemini has suffered and will continue to suffer irreparable harm as a result of Derecktor's indefensible breach of the Contract. Gemini's likelihood of success on the merits is highly probable, as evidenced by Derecktor's unexcused failure to deliver the Vessel on time, its breach of the July 11 agreement between counsel that the Vessel would not be moved for a week, and its breach of its obligation to use best yacht building practices by garaging the yacht in a structure that is not only unsuitable for the construction and finishing working required for this yacht, but also illegal since the structure has no certificate of occupancy or even any building permits. Gemini's irreparable harm is evidenced in its lack of an adequate remedy at law, because of Derecktor's apparent and admitted financial insecurity and failure to produce current insurance policies. As to the equities, Gemini has already paid more than $20 million on a $27 million contract and, in exchange, Derecktor has (1) provided a scheduled completion date which is 18 months late, and (2) moved the work-in-progress Vessel to the unsecured, exposed Shipping Container Shed where further construction under the quality standards set forth in the Contract will be unable to proceed. As such, the equities heavily favor Gemini. While the Arbitrator will determine the merits of the breach claim, temporary relief from this Court in aid of that arbitration is required so that the arbitral proceeding is not a futile exercise, at the end of which Derecktor is completely insolvent, unable to honor any judgment, and when the subject matter of the Contract—the $27 million vessel—has been completely devalued due to neglect at the shipyard.

### 1.    Injunction in Aid of Arbitration

The district court possesses the equitable power to enter injunctions in aid of arbitration to preserve parties' contractual rights pending arbitration regarding liabilities on the subject contract. *Borden, Inc. v. Meiji Milk Products, Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("New York law specifically provides for provisional remedies in connection with an arbitrable controversy ... and the equitable powers of federal courts include the authority to grant it."); *see also Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1053 (2d Cir. 1990) (holding that courts have the ability to "preserve the meaningfulness of the arbitration through a preliminary injunction"). For example, in *Eyewonder, Inc. v. Abraham*, 08 Civ. 3579, 2008 WL 2388718 (S.D.N.Y. June 10, 2008), in a dispute over an non-solicitation clause in a contract subject to arbitration, the district court entered an order restraining defendants from soliciting certain identified customers, which order would remain in effect until a final decision by the arbitrator as to the non-solicitation clauses' enforceability. The court further provided that the arbitrator would be able to amend the order as facts were developed in the arbitral proceeding. *Id.* Further, it should be noted that the subject contract need not expressly contemplate interim court relief. *See Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 251 (S.D.N.Y. 2002).

### 2.    Standard For Preliminary Injunction

The standards for obtaining a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are well established:

> A party seeking a preliminary injunction must establish that
> 1) absent injunctive relief, it will suffer irreparable harm, and
> 2) either a) that it is likely to succeed on the merits, or b) that there
> are sufficiently serious questions going to the merits to make them
> a fair ground for litigation, and that the balance of hardships tips
> decidedly in favor of the moving party.

*See Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); *see also Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir. 1995); *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 779-80 (2d Cir. 1994); *Air Transp. Int'l Ltd. Co. v. Aerolease Fin. Group, Inc.*, 993 F. Supp. 118, 123 (D. Conn. 1998). As discussed below, Gemini meets all requirements of Rule 65.

### 3.    Gemini Will Suffer Irreparable Harm

Gemini has and will continue to suffer actual and imminent harm that cannot be compensated monetarily due to: (1) the failure of Derecktor to complete construction of the Vessel; (2) Derecktor's financial insecurity; and (3) the damage to the value of the partially constructed Vessel. *See Walsh v. Design Concepts, Ltd.*, 221 A.D.2d 454, 455, 633 N.Y.S.2d 579, 580 (2d Dept. 1995) ("Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient.") (quotation marks omitted).

#### a.    Derecktor's Financial Insecurity

As discussed in more detail below, Derecktor's breach of the contract is unequivocal, unexcused, and indefensible; for purposes of establishing irreparable harm, however, Derecktor's financial instability will leave Gemini with no adequate remedy at law for said breach. It is well established that a defendant's inability to answer in money damages because of its financial condition constitutes irreparable injury. *See Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999) (inability to pay as basis for finding of irreparable injury); *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 912 (S.D.N.Y. 1986) (stating that a preliminary injunction has been deemed necessary to protect the plaintiff from irreparable harm where, "as a practical matter, the defendant would not or could not respond fully for those damages"). Moreover, irreparable injury based on inability to satisfy a potential judgment need not involve

8

actual insolvency or active efforts to divest assets. *See Benedict v. Amaducci*, No. 92 Civ. 5239, 1993 WL 87937 (S.D.N.Y. March 22, 1993).

Derecktor's unstable financial condition is evidenced by its own admissions made in an attempt to secure additional payments from Gemini over and above any monies currently due and owing on the Contract. *See* Marlon Decl., ¶¶ 3-9. Derecktor admitted to Gemini that its obligations under the contract are threatening its continued survival as a company. *Id.* ¶ 9. More specifically, on or about June 13, 2008, in a conversation with Dr. Anthony Marlon, the beneficial owner of Gemini, the President of Derecktor stated that, if Gemini did not pay more money, Derecktor would not be able to finish the Vessel because it was already losing too much money on the project. *Id.* ¶ 6. Derecktor also demanded that Gemini immediately pay 3.9 million dollars in a lump sum to cover certain outstanding change orders on the Project, even though those change orders have been disputed by the owner as improperly calculated and inadequately documented. *Id.*, ¶ 7. In addition, Derecktor's President stated that Derecktor could only continue the contract on a time and materials basis rather than on the negotiated and agreed fixed price in the Contract. *Id.*, ¶ 8. Derecktor's President concluded the conversation by stating that the financial pressure placed on his company by the Contract was threatening his company's continued survival. *Id.* ¶ 9.

Derecktor also engaged a financial consultant, Jeff Goldstein, for the express purpose of evaluating the company's financial status in light of the financial difficulties it was having in its continued performance under the Contract. Forsberg Decl., ¶ 4. Mr. Goldstein echoed the concerns of Derecktor's President, advising Gemini that he had reviewed the Derecktor's financial situation and concluded that the only way Derecktor could continue working on the Vessel would be if Gemini would immediately make a payment of two million dollars in

addition to the negotiated fixed price under the Contract, immediately pay an additional 3.9 million dollars in change orders, which have been disputed by Gemini as improper and inadequately documented, and change the contract from a fixed price contract to a contract for construction on a time and materials basis. *Id.*, ¶ 4.

In such circumstances, Gemini is compelled to seek injunctive relief prior to commencement of arbitration or face the very real probability that Derecktor would be unable to honor any money judgment that would be forthcoming from the Arbitrator. This is especially true at this time since the vessel in its partially constructed state has been moved to a facility that is illegal and does not even provide an enclosed adequate work space with utilities and heavy lift capability. Moreover, Derecktor has placed a Vessel that is designed to weigh approximately 150 tons when complete on a concrete slab and failed to answer the Building Department's fundamental question regarding the weight bearing capacity of this slab. *See* Bladen Decl., Exh. 9.

    **b.  Jeopardizing the Value of the Vessel: the Failure of Best Yacht Building Practices.**

Despite its obligation to perform the contract according to the best shipyard and yacht building practices, Derecktor has moved the Vessel from its location in a fully enclosed, fully functional shipbuilding facility to the temporary, unstable, and unsecured Shipping Container Shed which is exposed to the elements and lacks heat, electrical power, plumbing facilities, or any infrastructure which would permit further work on construction. The Shipping Container Shed does not even have a certificate of occupancy which would permit its lawful use for such a purpose. In addition to constituting a flagrant violation of the express contractual obligation to construct the vessel in accordance with the best shipyard and yacht building practices, *see* Robsham Decl. ¶ 6, the move to this illegal structure of unknown quality and structural integrity

10

jeopardizes the value that has already been invested into the Vessel by exposing it to physical damage.

The maintenance of the actual value of the partially built Vessel is especially important in light of Derecktor's probable inability to satisfy a money judgment for its breach of contract. That is, if Gemini cannot look to Derecktor for a money judgment to be made whole, it should be able to look to the partially built Vessel into which it has already invested over 20 million dollars. However, Derecktor's egregious deviation from best practice standards—evident in its relocation of the Vessel to the Shipping Container Shed—threatens to devalue the Vessel by exposing it to the elements, by permitting the Vessel to sit in a non-climate controlled environment, and, most importantly, by placing it in a structure that has not been shown to be safe and to comply with the building codes of the State of Connecticut and the City of Bridgeport. In its partially-built state, it is particularly susceptible to environmental damage. Accordingly, an order directing that the Vessel be returned to the building in which it was housed until this past weekend is essential to preventing irreparable harm.

Notably, Derecktor, itself, was fully aware that the Shipping Container Shed is not fit for storage of the Vessel. Indeed, when Derecktor applied for its building permit—less than twenty days prior to announcing its intention to relocate the Vessel—Derecktor represented to the City of Bridgeport that the Shipping Container Shed was intended as "an interim utility building as a storage and weather shelter for sandblasting and performing service work on vessels (work normally done outside.)" Balden Decl., Ex.. 8. This raises serious concerns about the adequacy of the building for construction of the Vessel as well the good faith with which Derecktor undertook to move the Vessel. Given its representations to the City of Bridgeport about one

11

month prior to the move, it is incredible that Derecktor would now maintain that the shed would satisfy the best yacht building practices as required under the Contract.

Under Connecticut law, Derecktor's use of the Shipping Container Shed is an illegal occupancy since there has been no certificate of occupancy issued for such a use (or any use). The illegality of the occupancy, in and of itself, is distressing. More distressing yet are the reasons that no certificate has been issued, which reasons speak directly to physical jeopardy of the Vessel, and in turn, the potential of irreparable harm. Specifically, the Building Department of the City of Bridgeport could not even determine whether the existing piles are adequate to support the structure or if the slab (on which the Vessel has been placed) has sufficient weight bearing capacity. Balden Decl., Ex. 9. There was additional concern about ability to satisfy the *requirements for a door to withstand 110 mile per hour winds, and how the roof would drain. Id.* Given the approaching hurricane season, these concerns are of paramount importance. The open questions all speak to the structural integrity of the building in which Derecktor has impermissibly placed Gemini's 20 million dollar investment. The court should not allow the illegal occupancy to continue and, in turn, allow the arbitration proceedings to be a futile exercise ending with Gemini holding little more than a money judgment with recourse against a financially irresponsible company, Derecktor.

Relatedly, the obvious peril in which Derecktor has placed the partially-finished Vessel raises concerns about the insurance coverage, Derecktor is required to maintain pursuant to Article 22 of the Contract. Balden Decl., ¶ 10. Recently, Derecktor has failed and/or neglected to provide Gemini with proof of its full insurance coverage for the Vessel, instead providing only Renewal Certificates. *Id.* As a result of this failure to provide the insurance policies, Gemini is uncertain with respect to the precise coverage terms for the Vessel as well as any conditions,

warranties or exclusions that may apply or may be implicated by the move of the vessel to the Shipping Container Shed. *Id.* Gemini has a contractual right to inspect the insurance policies. Accordingly, Gemini has asked for expedited discovery regarding said insurance policies.

### 4.    Gemini Is Likely To Succeed On The Merits Of Its Claim

Gemini can also clearly establish a high probability of success on the merits, in addition to the aforementioned serious irreparable harm, and, as such, satisfies the standard for a mandatory injunction directing Derecktor to continue construction of the Vessel. *See Doherty Assoc. v. Saban Entm't*, 60 F.3d 27, 34 (2d Cir. 1995) (holding that a mandatory injunction can be issued "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result for a denial of preliminary relief"). The mandatory injunction standard may be satisfied where plaintiff can make a clear showing that defendant is in flagrant violation of an express duty. *See Schwartz v. Interfaith Med. Ctr.*, 7615 F. Supp. 1190, 1198 (E.D.N.Y. 1989) (issuing mandatory injunction upon showing that defendants were "in flagrant violation of express statutory duties); *see also Norcom Electronics Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 207-08 (S.D.N.Y. 2000) (issuing mandatory injunction directing performance on supply contract in advance of arbitration regarding breach of that contract where defendant could provide "no basis for ignoring express language of the Agreement").

Gemini and Derecktor have a contractual agreement for the construction of the Vessel. Gemini has made the requisite payments under the Agreement. Derecktor has stated that it will not honor its contractual obligations and will not complete work on the Vessel and has in fact stopped work except to the extent required for the move to the Shipping Container Shed. Derecktor has offered no reasonable explanation for its flagrant violation of its express contractual duty to complete construction of the Vessel or to abide by best yacht building practice standards.

13

Importantly, the contract unequivocally requires Derecktor to build the Vessel using "the best yacht building practices." Contract, at 1. The detailed contract specifications, expressly incorporated into the Contract in Article 7 and appended as Exhibit A to the contract, reiterates this standard by stating: "it is the intent of this design and specification to construct a super yacht to the highest standards of construction and outfitting." Gemini has established that Derecktor is plainly not employing the best yacht building practices while the Vessel is housed in the Shipping Container Shed through the affidavit of Daniel Robsham who is an expert in the field. More fundamentally, the violation of best practices is evident in the comparison of the conditions in the shipyards main construction building with the conditions at the Shipping Container Shed. In accordance with best yacht building practices, in the main building, the Vessel had been in a fully enclosed structure of permanent nature which includes heat, electricity, plumbing, and heavy lift capability. It also has extensive mezzanine staging areas permitting outfitting and preparatory work to be performed with easy access to the main deck of the Vessel. Yet, the Shipping Container Shed plainly does not satisfy those standards insofar as the building is not fully enclosed, lacks climate control, plumbing, permanent electricity, heat, and an infrastructure like a mezzanine and an overhead crane to facilitate movement of materials and equipment. Most egregiously, the use of the structure violates Connecticut law, Conn. Gen. Stat. § 29-265, which result the Court should not countenance.

**5.      The Balance of Equities Weighs Substantially in Favor of Gemini**

Based on Derecktor's actions, Gemini has been and will continue to be denied use of its property to its serious detriment and at a substantial financial cost. There is no question that the property, even in its unfinished state, is very valuable, in light of the $20 million already expended by Gemini towards its completion. There is a grave risk that—given Derecktor's financial condition evidenced, in part, by its request that Gemini pay an additional $5.9 million

14

and convert the contract to a time and materials basis so that it may stave off more serious

financial consequences, and its irresponsible actions—the Vessel is not, or will not be, properly

maintained and that if destroyed or damaged while in the illegal structure that Derecktor will be

unable to satisfy a judgment for the value of the Vessel. Additional risk is apparent in

Derecktor's intention to place this $20 million work-in-progress in an unsecured shed or, even in

an outdoor location, where the infrastructure does not even exist to continue construction. Given

the incredible investment of Gemini in the project and the absence of any return, equities clearly

favor Gemini which is faultless in the whole situation. Conversely, culpability lays squarely

with Derecktor which has refused and/or been unable to perform on the Contract.

### 6.    Gemini Should Not Be Required To Post Bond

Consistent with settled case law, Gemini should not be required to give any security as a

prerequisite to the issuance of a temporary restraining order or preliminary injunction. Federal

Rule of Civil Procedure 65(c) states, in pertinent part, "[n]o restraining order or preliminary

injunction shall issue except upon the giving of security by the applicant, *in such sum as the

court deems proper* . . ." Fed. R. Civ. P. 65(c) (emphasis added). Courts throughout this

jurisdiction, have interpreted the clause "in such sum as the court deems proper," to mean that

"the District Court is vested with wide discretion in the matter of security and it has been held

proper for the court to require no bond." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d

Cir. 1996) (no bond required prior to the issuance of preliminary injunction).

"A district court may dispense with the posting of security entirely where the parties

sought to be enjoined or restrained 'have not shown that they will likely suffer harm absent the

posting of a bond.'" *See Cosgrove v. Bd. of Educ. of the Niskayuna Cent. Sch. Dist.*, 175 F.

Supp. 2d 375, 399 (N.D.N.Y. 2001) (quoting *Doctor's*, 85 F.3d at 985); *see also Clarkson Co. v.*

15

*Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974).

Here, Derecktor will suffer no harm absent the posting of a bond. It is indisputable that Derecktor will not be depriving of any value by the entry of the injunction. Rather, they may be made to perform on a contract for which they have already been paid $20 million.

**CONCLUSION**

Based on the foregoing, plaintiff Gemini II Ltd. respectfully requests that, pending a final decision from a third-party arbitrator regarding Gemini's claim that Derecktor has breached the Vessel Construction Agreement entered by the parties and dated as of June 30, 2005, the Court issue a temporary restraining order and preliminary injunction in favor of Gemini II Ltd:

1.  directing Derecktor to return the catamaran sailing yacht bearing Builder's Hull No. 85135 (the "Vessel") to the new building at Derecktor's Shipyard located in Bridgeport, Connecticut where it had been located prior to its removal therefrom on or about July 12, 2008;

2.  directing Derecktor to continue full time construction of the Vessel pursuant to the Vessel Construction Agreement between Gemini and Derecktor dated as of June 30, 2005 ("Contract");

3.  directing expedited discovery, to which Derecktor shall respond within one day of the Order, requiring Derecktor to produce the following documents:

    a.  last audited and unaudited balance sheet, income statement, cash flow statement, and 2008 cash flow projections, budgets/forecasts, capital expenditures, and general ledger (in electronic form);

    b.  work papers and reports of the consultant Jeff Goldstein;

    c.  2007 tax return with corporate balance sheet;

16

    d.   documents and communications with the Bridgeport Building Department regarding the cargo container structure;

    e.   documents and communications with the insurers and broker and their representatives removing the vessel into the cargo container structure and coverage for storage in the building;

    f.   copies of all current insurance policies and endorsements related to the Vessel; and

4.   ordering such other further relief in aid of arbitration as this Court deems appropriate.

Dated:   New York, New York
         July 15, 2008

                    Respectfully submitted,

                    HOLLAND & KNIGHT LLP

                    By: _____
                       John M. Toriello
                       Lars Forsberg
                       Patrick J. Sweeney
                       David R. Brand

                    195 Broadway
                    New York, New York 10007
                    (212) 513-3200

                    Attorneys for Plaintiff
                    Gemini II Ltd.